IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

```
ANGELA SUE HENDERSON,        }
                             }
     Plaintiff               }
                             }
vs.                          }   CIVIL ACTION NO.
                             }
                             }   CV-97-AR-1925-E
J & R INDUSTRIES, INC.;      }
HUDDLE HOUSE, INC., and JAMES}
EARL KING, SR.,              }
                             }
     Defendants
```

FILED
98 APR 15 PH 1:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
APR 15 1998

## MEMORANDUM OPINION

Presently before the court is a March 6, 1998 motion for summary judgment filed by defendant and cross-claimant, Huddle House, Inc. ("Huddle House"), as against defendant and cross-defendant, James Earl King, Jr. ("King"). Plaintiff, Angela Sue Henderson ("Henderson"), is suing Huddle House, along with J & R Industries, Inc. ("J & R") and King, its owner, who operates a Huddle House franchise. Henderson claims sexual harassment, 42 U.S.C. § 2000e, *et seq.*, outrage, and invasion of privacy by both J & R and King, and negligent supervision of King as against Huddle House. Huddle House has filed a cross-claim against King alleging breach of the franchise agreement. The court finds that Huddle House's motion for summary judgment as against King should be granted in part, and denied in part.

### I. SUMMARY JUDGMENT STANDARD

Under the Rule 56(c), F.R.Civ.P., summary judgment is

23

appropriate where "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c).

## II. INDEMNITY PROVISION

Huddle House contends that King has a duty under their franchise agreement to defend and indemnify Huddle House against Henderson's lawsuit. In support of its Rule 56 motion, Huddle House first directs the court to the following provision found in the franchise agreement:

> (a) <u>Indemnification</u>. Operator agrees to <u>protect, defend, indemnify</u>, and hold Company [e.g., Huddle House], and its respective directors, officers, agents, attorneys and shareholders, jointly and severally, harmless from and against all claims, actions, proceedings, damages, costs, expenses and other losses and liabilities, consequently, directly or indirectly incurred (including without limitation attorneys' and accountants' fees) <u>as a result of, arising out of, or connected with the operation of the Franchised Business</u>.

Doc. 18, Koeppel Aff., Ex. 1 at 36 (emphasis supplied).

> Generally, under Alabama law, joint tort-feasors are not entitled to contribution or indemnity. However, when one joint tort-feasor has agreed in writing to indemnify the other joint tort-feasor, even for claims based on the other's own negligence, the agreement, if otherwise valid, can be upheld and enforced.

*Humana Medical Corp. v. Bagby Elevator Co., Inc.*, 653 So. 2d 972,

2

974 (Ala. 1995) (citations omitted). An indemnity agreement is enforceable when "the intent to indemnify [is] expressed in 'clear and unequivocal language' and the parties ... 'knowingly, evenhandedly, and for valid consideration' entered into it." *Id.* at 975.

Despite the unambiguous defense and indemnity language found in the franchise agreement, King argues he has no such duties under the indemnity provision. Without citation to legal authority or to a specific provision of the franchise agreement, King blandly and yet boldly asserts that he "clearly...cannot be compelled to indemnify or defend Huddle House, Inc. on claims [asserted] directly against Huddle House, Inc." King Br. at 3. To the contrary, Alabama law provides that King can be compelled to defend and indemnify Huddle House if their agreement indicates that the parties intended such. This agreement specifically provides that King has a duty to "protect," "defend" and "indemnify" Huddle House against "all claims," even those asserted "jointly and severally." Doc. 18, Koeppel Aff., Ex. 1 at 36. The intent of this provision is clear. Thus, King cannot avoid his obligations as they relate to the claims Henderson asserts against Huddle House.

King also contends that Henderson's claims do not "'result'

from the operation of the business, as defined under the contract...." King Br. at 3 - 4. However, the agreement specifies that King has a duty to defend and indemnify Huddle House against any claims that "result," "arise out of," or are "connected with the operation of the Franchised Business." Doc. 18, Koeppel Aff., Ex. 1 at 36. King cannot seriously argue that Henderson's claims of negligent supervision are not "connected with" the operation of the franchise. Huddle House is entitled to summary judgment on its claim that King has a duty to defend and indemnify it against Henderson's claims.

### III. INSURANCE COVERAGE PROVISION

Although not stated as an <u>alternative</u> theory against King, Huddle House's claim for breach of contract to provide it insurance against claims like Henderson's claim is, in effect, a "back stop" position, rendered moot or redundant by the favorable ruling above on indemnity. The monetary obligation or potential damage proximately resulting from this alleged breach is precisely the same under both theories. Nevertheless, the court will address the alternative theory.

The franchise agreement requires that King maintain specified types of liability insurance:

    15. Insurance

    (a) <u>Obligation of Operator to Procure Insurance</u>.

> Operator shall, at its expense...procure and maintain in full force and effect...the types of insurance enumerated in the Confidential Operating Manual which shall...designate Company as an additional named insured, including without limitation, the following:
>
>> (i) Employer's lability and worker's compensation insurance as prescribed by law:
>>
>> (ii) Comprehensive general liability insurance covering the operation of the Franchised Business:
>>
>> (iii) Business interruption insurance:
>>
>> (iv) Coverage insuring the Premises: contents and sign [sic].

Doc. 18, Koeppel Aff., Ex. 1 at 34. Huddle House contends that King has breached this provision by failing to obtain proper insurance coverage and by failing to name Huddle House as a co-insured.

The court is unpersuaded by Huddle House's contention in this regard. King has produced evidence that he held "Workers Compensation and Employers Liability coverage," Doc. 22, Ex. B, naming both J & R Industries and Huddle House as insureds, from March 1996 until March 1997. Doc. 22, Ex. C. The incidents that give rise to Henderson's claims allegedly occurred in July 1996. Therefore, it appears that King did maintain the required "Employer's Liability" coverage during the time period at issue. While the agreement requires other types of insurance coverage,

including "Comprehensive General Liability," Huddle House has made no attempt to show the court what these types of mandatory insurance really covered.  It may take an insurance expert to tell us after a *Daubert* hearing what "comprehensive general liability" includes.  Huddle House is not entitled to summary judgment, at least not yet, on its claim that King breached the insurance coverage provision of the franchise agreement.  In practical effect, the issue is moot.

### IV. CONCLUSION

Accordingly, summary judgment for Huddle House is appropriate on its indemnification claim but is not appropriate on its insurance provision breach of contract claim.

A separate and appropriate order will be entered.

DONE this 15th day of April, 1998.

```
                              WILLIAM M. ACKER, JR.
                              UNITED STATES DISTRICT JUDGE
```